UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENT ALAN OWINGS,

        Petitioner,

v.                                 Case No. 21-cv-11355
                                   HON. MARK A. GOLDSMITH

ADAM DOUGLAS,

        Respondent.

_____/

### OPINION & ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING THE MOTION TO STRIKE THE ANSWER TO THE COMPLAINT (Dkt. 15), (3) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (4) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Brent Alan Owings, confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his convictions for first-degree home invasion, Mich. Comp. Laws. § 750.110a(2); and assault by strangulation, Mich. Comp. Laws. § 750.84(1)(b). The trial court sentenced Petitioner to 10 to 20 years' imprisonment for the home invasion conviction and 6 to 10 years' imprisonment for the assault conviction, to be served consecutively. For the reasons that follow, the petition for writ of habeas corpus is denied.

### I. BACKGROUND

Petitioner was convicted after a jury trial in Michigan's Oakland County Circuit Court. This Court recites verbatim the relevant facts upon which the Michigan Court of Appeals relied, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> The jury convicted defendant of breaking into the mobile home of Alexandra Wilhelme and strangling her during the early morning hours of April 2, 2017.

1

Defendant and Wilhelme were former romantic partners and they had a daughter together. They continued to see each other, but at the time of the assault they were no longer involved in a romantic relationship. Although defendant had been trying to get back together with Wilhelme, she had repeatedly rejected his attempts.

Wilhelme lived in a mobile home with her three children, her mother Windy Marion, and a younger sister. On the evening of April 1, 2017, Wilhelme's brother, Gregory Marion, and his girlfriend, Jessica Papuga, also stayed at the mobile home. Wilhelme attended a bonfire gathering that evening. During the evening, she communicated with defendant by text message and contemplated meeting with defendant later that night. However, Wilhelme denied that she invited defendant to her home, and denied that she gave defendant permission to enter the home. After Wilhelme returned home that night, she received a telephone call from defendant, who wanted to come over to talk about their relationship and possibly getting back together. According to Wilhelme, she told him that she was going to bed and was not in a state of mind to discuss their relationship at that time.

After Wilhelme was in bed, she saw defendant inside her home, crouched down behind a fish tank near Wilhelme's bedroom door. Defendant then emerged and told Wilhelme that he was there to talk about their relationship. Wilhelm did not immediately ask defendant to leave, but after they began to argue, she told defendant to leave and that their relationship was over. According to Wilhelme, defendant got on top of her and placed his hand on her throat and began to strangle her, to the point that she was unable to scream or talk. She eventually was able to roll over, get away from defendant, and scream. At that point, defendant left. Wilhelme ran into the living room, woke up her brother, and repeatedly told him, "He's gonna kill me." Wilhelme's screaming also woke up Windy and Papuga. Gregory called the police. Gregory and the police later discovered footprints in the wet or frozen grass that led from a nearby clubhouse up the back steps to the home's rear entrance, which was rarely used.

Photographs of Wilhelme after the incident showed that she had red marks on one side of her neck and collarbone. Her left arm was also red. For a few days afterward, she told family members that her throat hurt, that it was difficult to swallow or eat, and her voice was raspy. She also complained of a headache, and soreness and numbness on one side of her body. At trial, Wilhelme denied that she had any problems with her throat for more than a day and generally denied experiencing any other physical ailments after the incident.

People v. Owings, No. 340111, 2019 WL 1211443, at *1 (Mich. Ct. App. Mar. 14, 2019).

Petitioner's conviction was affirmed on appeal. Id., lv. den. 939 N.W.2d 251 (Mich. 2020).

2

Petitioner filed his original petition in 2021, which was held in abeyance so that Petitioner could exhaust his claims in the state courts. Owings v. Miniard, No. 21-cv-11355, 2021 WL 3422382 (E.D. Mich. July 23, 2021).

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. People v. Owings, No. 2017-262837 (Oakland Cty. Cir. Ct. Aug. 16, 2022)(Dkt. 14-10). The Michigan appellate courts denied Petitioner leave to appeal. People v. Owings, No. 364958 (Mich.Ct.App. Aug. 11, 2023); lv. den. 3 N.W.3d 802 (Mich. 2024).

Petitioner subsequently filed a successive post-conviction motion for relief from judgment with the trial court, which was denied because the circuit court lacked subject matter jurisdiction over Petitioner's motion because the appeal from the denial of his first motion for relief from judgment was still pending in the Michigan Supreme Court. People v. Owings, No. 2017-262837 (Oakland Cty. Cir. Ct. Jan.11, 2024)(Dkt. 14-12).

This Court subsequently granted Petitioner's motion to reopen the case and to amend the petition. The Court also amended the caption of the case to reflect the name of Petitioner's new warden.  Respondent was ordered to file an answer and the Rule 5 materials within one hundred and eighty days of the Court's order.  Petitioner had forty-five days from the receipt of the answer to file a reply brief. Owings v. Douglas, No. 21-cv-11355, 2024 WL 3262589 (E.D. Mich. June 28, 2024).

Petitioner, in his amended habeas petition, seeks habeas relief on the following grounds: (i) Petitioner was denied the effective assistance of appellate counsel, (ii) Petitioner was denied a fair trial because of prosecutorial misconduct, (iii) Petitioner was denied the effective assistance of trial counsel, (iv) Petitioner was denied a fair trial because of the judge's following errors: (a) failure to direct a verdict of not guilty on the home invasion charge, (b) permitting the prosecutor

to play prejudicial recordings of the victim and Petitioner to the jury, (c) permitting the prosecutor to introduce prior bad acts evidence involving prior acts of domestic violence against the victim, (d) denying Petitioner's request to consult with separate counsel before deciding whether or not to testify, (e) improperly scoring offense variables under the Michigan Sentencing Guidelines, and (f) improperly departing above the sentencing guidelines range, (v) Petitioner was denied a fair trial when the jurors were not given a proper instruction on the correct elements for the offense of assault by strangulation, (vi) Petitioner has new evidence which establishes his innocence and counsel's ineffectiveness, and (vii) The statute, Mich. Comp. Laws § 750.84(B), assault by strangulation or suffocation, is unconstitutional in its application as it is vague and overbroad.

## II.  LEGAL STANDARD

Title 28 of the United States Code Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

4

indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." <u>Id.</u> at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id</u>. at 410-411.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011)(<u>quoting</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).  To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id</u>. at 103.

### III. ANALYSIS

#### A.  Motion to strike the answer (Dkt. 15)

Petitioner, as part of his reply, has filed a motion to strike Respondent's answer on the ground that it is untimely and that it exceeds the page limits for an answer to a habeas petition.

The Court denies Petitioner's request to strike Respondent's answer for three reasons.

First, Respondent's answer was not untimely. It is true that when the Court reopened the case on June 28, 2024, Respondent was given 180 days from that date, or until December 28, 2024, to file an answer to the petition. However, this Court subsequently discovered that this Order had only been served on Petitioner and not Respondent. When this error came to the Court's attention, the Court—on March 27, 2025—reissued the order reopening the case and setting again a 180-day deadline for Respondent to file an answer. (Dkt. 13).  Respondent filed an answer to the petition on September 23, 2025, which was within the deadline set by the Court in the amended order

reopening the case to file an answer. (Dkt. 14). A federal court has discretion in extending the time for a state to file a response to a habeas corpus petition. See Whitfield v. Martin, 157 F. Supp. 2d 758, 761 (E.D. Mich. 2001).  This Court chose to extend the deadline because Respondent, through no fault of their own, did not receive this Court's initial scheduling order. Respondent's answer was timely filed.

Secondly, Rule 5, Rules Governing Habeas Proceedings, does not provide a page limitation for an answer to a habeas petition. See Holtz v. Ryan, No. CV1702562, 2019 WL 9240239, at *1, n.2 (D. Ariz. Sept. 30, 2019), report and recommendation adopted sub nom. Holtz v. Brnovich, No. CV-17-02562, 2020 WL 1862099 (D. Ariz. Apr. 14, 2020).  There is thus no reason to strike Respondent's answer on the ground that it exceeded a page limitation. Respondent's lengthy answer was necessitated by the numerous subclaims raised by Petitioner in his amended petition.

Finally, as another judge in this district indicated: "There is no way a § 2254 case can be decided on a petitioner's submission only, and a court should not put itself in a position of considering the petition without a response by the respondent." Mahaday v. Cason, 222 F. Supp. 2d 918, 921 (E.D. Mich. 2002) (citing to Beall v. Cockrell, 174 F. Supp. 2d 512 (N.D. Tex. 2001)). While another judge in this district has refused to grant an extension of time to the State of Michigan to file an answer and has considered a habeas petition without having the benefit of an answer from the respondent, See Wilkerson v. Jones, 211 F. Supp. 2d 856 (E.D. Mich. 2002), the problem with this approach is that any such decision by the court "creates a self-inflicted wound," because without a response from the State of Michigan, "a judge is left with a one-sided view of the habeas corpus petition–that of the prisoner, who is most likely untrained in the law and has submitted a short petition to the court that does not include records and transcripts from the court proceedings in which the prisoner was convicted." Mahaday, 222 F. Supp. 2d at 921.  Under these

circumstances, a judge is unable to "isolate the precise contours of the dispute," because he or she would be "missing half of the story," i.e. the state court proceedings, which are necessary to properly adjudicate the habeas petition. Id.  Therefore, although an expeditious review of a habeas petition is desirable, a quick adjudication of the petition should not be done at the expense of an incomplete review. Id. at 922. Accordingly, the motion to strike the answer is denied.

**B.  Procedural Default**

Respondent contends that several of Petitioner's claims are procedurally defaulted either because Petitioner failed to preserve the issue for appellate review by objecting at trial or that he raised them for the first time in his post-conviction motion for relief from judgment and he failed to show cause for failing to raise the issues in his appeal of right, as well as prejudice, as required by Michigan Court Rule 6.508(D)(3).

Petitioner argues that trial counsel was ineffective for failing to object to some of these alleged errors at the trial court level or that appellate counsel was ineffective for failing to raise some of these claims on his appeal of right.

Ineffective assistance of counsel may establish cause for procedural default. Edwards v. Carpenter, 529 U.S. 446, 451-452 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be easier to consider the merits of these claims. See Cameron v. Birkett, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). Further, Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010).

**C.  Prosecutorial misconduct**

Petitioner first contends that he was denied a fair trial because the prosecutor engaged in misconduct by: (i) interjecting her own testimony while questioning the victim and effectively testifying, (ii) the prosecutor misstated material evidence and otherwise erred in her closing arguments, and (iii) the prosecutor vouched for the credibility of the victim and other prosecution witnesses.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004) (citing Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. Donnelly, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 567 U.S. 37, 48 (2012) (quoting Harrington, 562 U.S. at 103).

Petitioner first contends that the prosecutor acted as a witness by questioning the victim about prior conversations they had about the case.

The Michigan Court of Appeals rejected this claim on Petitioner's appeal of right:

Defendant argues that the prosecutor effectively testified as a witness when she referred to her prior conversations with Wilhelme when questioning Wilhelme about telephone calls between herself and defendant and why she felt threatened by him. We disagree with defendant's argument that the prosecutor's questions were

the functional equivalent of testimony. The prosecutor's questions were leading, but that was not improper because Wilhelme could be characterized as a hostile witness, given that at the time of trial she appeared to align herself with defendant. MRE 611(d)(3). The use of leading questions is also permitted to develop a witness's testimony. MRE 611(d)(1). Although defendant argues that the prosecutor's questions allowed her to vouch for her own version of events, the trial court instructed the jury on what constitutes evidence and specifically stated that "[t]he lawyers' questions to the witnesses ... are ... not evidence" and the questions could be considered "only as they give meaning to the witnesses [sic] answers." The court's instructions were sufficient to protect defendant's substantial rights.

People v. Owings, 2019 WL 1211443, at *4.

Petitioner's claim that the prosecutor was allowed to ask the victim leading questions relates to a state rule of evidence, and federal habeas review of state court evidentiary rulings is extremely limited. See Jordan v. Hurley, 397 F. 3d 360, 362 (6th Cir. 2005). The prosecutor's leading questions were not improper because she used these questions to develop the victim's testimony. The prosecutor's leading questions to the victim were also not improper in light of the fact that by the time of trial, the victim attempted to recant her prior testimony or statements against Petitioner or even defend or minimize his actions. Petitioner was not denied a fundamentally fair trial because the prosecutor was allowed to ask leading questions on her direct examination of the victim, who was a reluctant and evasive witness. See Jackson v. Bradshaw, 681 F.3d 753, 764 (6th Cir. 2012).

Petitioner next claims that the prosecutor made flagrant misstatements of the facts in her closing argument.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." Washington v. Hofbauer, 228 F.3d 689, 700 (6th Cir. 2000) (quoting Donnelly, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial.

9

Byrd v. Collins, 209 F.3d 486, 535 (6th Cir. 2000).  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. Id.

Petitioner raised this claim in his post-conviction motion for relief from judgment. The trial judge denied the claim:

> Simply put, the prosecutor made no flagrant misstatements of evidence to which trial counsel should have objected. The Defendant has chosen to focus on portions of the victim's trial testimony, while ignoring the other evidence presented at trial. Statements made by the prosecutor during closing argument were supported by the testimony of the victim and other witnesses at trial. Additionally, this Court properly instructed the jury that the attorneys' comments were not evidence.
>
> ***
>
> First, as noted above, the Defendant did not present any comments by the prosecutor that were not supported by the testimony of all the witnesses at trial. The Defendant's tunnel vision on portions of the victim's testimony is belied by the broader record. Second, the Court properly instructed the jury that an attorney's questions and comments are not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." People v Abraham, 256 Mich App 265, 279 (2003). As such, if the prosecutor had made any slight misstatement during closing argument, the Court's instruction would have cured any error or misstatement.

People v. Owings, No. 2017-262837-FH, * 8-9, 12-13 (Oakland Cty. Cir. Ct. Aug. 16, 2022)(Dkt. 14-10)(PageID. 1210-11, 1214-15).

In the present case, because there was at least some factual support on the record for the prosecutor's argument, or the remarks were based on reasonable inferences from the evidence, the prosecutor's remarks did not deprive Petitioner of a fair trial. See United States v. Henry, 545 F.3d 367, 377 (6th Cir. 2008).  Moreover, any possible prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. 8/07/17 Jury Trial Tr. at PageID.1095 (Dkt. 14-6). See Hamblin v. Mitchell, 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner also appears to argue that the prosecutor improperly vouched for the credibility of the victim in her closing argument.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." Caldwell v. Russell, 181 F.3d 731, 737 (6th Cir.1999) (punctuation modified). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. Id. The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. United States v. Causey, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." See United States v. Francis, 170 F.3d 546, 550 (6th Cir. 1999) (punctuation modified). Nonetheless, "[P]rosecutorial vouching rarely warrants a new trial." Smith v. Jones, 326 F. App'x 324, 328 (6th Cir. 2009). Indeed, "[T]he Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process." Wilson v. Bell, 368 F. App'x 627, 632, n.3 (6th Cir. 2010). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. See United States v. Humphrey, 287 F.3d 422, 433 (6th Cir. 2002).

A prosecutor "is free to argue that the jury should arrive at a particular conclusion based upon the record evidence," including whether a witness should be believed. Cristini v. McKee,

11

526 F.3d 888, 902 (6th Cir. 2008).  In addition, prosecutors may "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." Bates v. Bell, 402 F.3d 635, 646 (6th Cir. 2005).

The Court reviewed the prosecutor's closing argument. 8/07/17 Jury Trial Tr. at PageID. 1057-72, 1088-92 (Dkt. 14-6). All of the prosecutor's remarks were based on the evidence or reasonable inferences from the evidence. Petitioner failed to show that the prosecutor vouched for the victim.

Finally, any alleged vouching for the credibility of the victim did not rise to the level of a due process violation, because the jury was informed by the judge that the prosecutor's arguments were not evidence and the judge instructed jury as to the factors to consider in evaluating the credibility of the witnesses' testimony. 8/07/17 Jury Trial Tr. at PageID. 1095-98 (Dkt. 14-6). Byrd, 209 F. 3d at 537-538.  Petitioner is not entitled to habeas relief on his prosecutorial misconduct claim.

### D.  Claims # 3 and # 6: Ineffective Assistance of Trial Counsel

Petitioner alleges he was denied the effective assistance of trial counsel because counsel (i) failed to object when the prosecutor played the recorded telephone conversations between Petitioner and the victim to refresh the victim's memory,  (ii) failed to object to the prosecutor's reference to her prior conversations with the victim while questioning her, (iii) failing to raise a hearsay objection to the testimony of Gregory, Papuga, and Windy regarding the victim's statements shortly after the 911 call on the night in question, (iv) failing to object to the scope of the testimony offered by the prosecution's expert witness, Diane Zalecki Bertalan, (v) failed to object to the prosecutor's misstatements in her closing argument, (vi) and (vii) failed to impeach the victim's testimony or adequately attack the victim's credibility in his closing argument, (viii)

12

failed to object to the scoring of the Michigan Sentencing Guidelines, (ix) failed to object to Trooper Hallette's presence in the courtroom in violation of the trial court's sequestration order, and (x) failed to challenge the district court's decision to bind the defendant over for trial following the preliminary examination.

To establish ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two part test. Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id.  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. at 689. In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Id.  Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Petitioner first argues that counsel was ineffective in failing to object to the prosecutor playing recorded telephone conversations between Petitioner and the victim in order to refresh her memory, because the telephone conversations were inadmissible as substantive evidence and contained prejudicial information. Although acknowledging that it was procedural error for the prosecutor to play the actual conversations for the jury, the Michigan Court of Appeals concluded that counsel was not constitutionally ineffective for choosing not to object, in that Petitioner's statements were admissible under Michigan Rule of Evidence 801(d)(2)(A), as well as the fact that

the victim affirmed the accuracy of the recordings, thus, her refreshed recollection was admissible as substantive evidence. Owings, 2019 WL 1211443, at *3.

Trial counsel was not ineffective in failing to object to any out-of-court statements made by Petitioner because they were admissible under Mich. R. Evid. 801(d)(2) as the admission of a party-opponent. See Robins v. Fortner, 698 F.3d 317, 335 (6th Cir. 2012). Moreover, even if counsel was deficient in failing to object to the admission of the recorded conversations into evidence when they were being used solely to refresh the victim's memory, Petitioner was not prejudiced by counsel's failure to object, considering the ample evidence of Petitioner's guilt even absent the recording. See State v. Knott, 2004-Ohio-5745, ¶ 29, 2004 WL 2428449, * 7 (Ohio App. 4 Dist. October 26, 2004)(Defense counsel's failure to object when state played in jury's presence recording of jailhouse conversation between individual and defendant's son, who was convicted of murder, to refresh son's memory did not constitute ineffective assistance in prosecution for obstruction of justice and tampering with evidence related to murder committed by son; although it was error for state to refresh son's memory by playing recording in jury's presence, defendant did not suffer prejudice, as even without recording, evidence of guilt was ample).

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutor asking the victim about their prior conversations about the case. As mentioned above, the Michigan Court of Appeals concluded that it was proper under Michigan law for the prosecutor to ask the victim leading questions. Because it was proper under Michigan law for the prosecutor to ask leading questions to the victim, particularly when she was at times a reluctant and evasive witness, counsel was not ineffective for failing to object. Jackson v. Bradshaw, 681 F.3d at 764.

14

Petitioner next claims that his counsel was ineffective for failing to raise a hearsay objection regarding the victim's statements to various witnesses after placing the 911 call.

Counsel did raise an objection to this testimony to the first witness who testified about it, Gregory Marion, on the ground that it was hearsay evidence. Following back and forth arguments from the prosecutor and defense counsel, the trial court overruled the objection. 7/31/17 Jury Trial Tr. at PageID. 568-572 (Dkt. 14-4). The judge would have almost certainly rejected any objections by counsel to the other two witnesses testifying about the victim's statements to them following the 911 call. In light of the fact that the trial court had already ruled against him, defense counsel may reasonably have concluded that further objection would have been fruitless. See, e.g., Garrett v. United States, 78 F.3d 1296, 1301-02 (8th Cir. 1996). Trial counsel was not ineffective for failing to raise a futile objection. See United States v. Johnson, 9 F. App'x 373, 374 (6th Cir. 2001) (citing McQueen v. Scroggy, 99 F.3d 1302, 1328 (6th Cir. 1996)).

Petitioner also contends that trial counsel should have objected to testimony from Gregory, Papuga, and Windy that, a couple of days after the incident, the victim had still had a "raspy" voice and complained about suffering from a sore throat, had difficulty eating and swallowing, had a headache, and suffered from soreness and numbness on the left side of her body. The Michigan Court of Appeals rejected this claim, noting that the victim's statements describing her physical ailments were admissible under Mich. R. Evid. 803(3), the present sense impression to the hearsay rule. People v. Owings, 2019 WL 1211443, at * 5.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." Miskel v. Karnes, 397 F.3d 446, 453 (6th Cir. 2005)(quoting Allen v. Morris, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that the victim's statements about her physical injuries following the

15

assault were admissible under the present sense impression exception contained in Michigan's hearsay rules, this Court must defer to that determination in resolving this ineffective assistance of counsel claim. See Brooks v. Anderson, 292 F. App'x 431, 437-38 (6th Cir. 2008).  Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject this portion of Petitioner's third ineffective assistance of trial counsel claim. See Davis v. Straub, 430 F.3d 281, 291 (6th Cir. 2005).

Petitioner next argues that defense counsel was ineffective for failing to object to the scope of the testimony offered by the prosecution's expert witness, Diane Zalecki Bertalan, who had been qualified as an expert in the field of forensic nursing, with a focus on strangulation. Petitioner claims that the following testimony exceeded the scope of Bertalan's expertise:

> Q. As far as — counsel was asking you questions about the fact that when [Wilhelme] was interviewed by the police she said she couldn't breathe and then at the exam she said she could lightly breathe.
>
> A. Correct.
>
> Q. And you talked about well, that was later —
>
> A. Right.
>
> Q. — because he said is that significant to you and you said well, that was later, why is it because it's later significant to you?
>
> A. Well, it's important because that's part of the cycle of domestic violence. You know, initially, there is the fear, which usually, you know, call 911, I need help, followed by anger, followed by an understanding that, wait a minute, this is gonna really impact my life, and so individuals start to weigh what are some of the consequences, and it could be, you know, money, it could be child care that this person provides, it could be a lot of different things that this person provides to their life. It could be just the stability of the family. And so it is not unusual at all that we find victims of domestic violence backtracking a little bit because of the fact that they start to realize just what the impact will mean.

People v. Owings, 2019 WL 1211443, at * 5.

The Michigan Court of Appeals rejected the claim, finding Bertalan's testimony to be admissible:

> Bertalan was qualified as an expert in forensic nursing to address strangulation, and she was also the program director of the forensic nursing program at HAVEN, an agency that serves victims of domestic violence, where she had worked for almost 11 years. Bertalan testified that in her role as a forensic nurse, "we are concerned with the medical needs of a patient, and we also have specialized training in forensics, so we gather evidence and make observations, along those lines." Bertalan's qualification as a forensic nurse with a focus on strangulation was intertwined with her background and experience in treating victims of domestic violence. We are not persuaded that the challenged testimony was clearly outside the scope of her expertise.
>
> Moreover, defense counsel had earlier questioned Bertalan about what conclusions could be drawn from Wilhelme's testimony at the preliminary examination that she could only "breathe lightly," as opposed to being unable to breathe. By asking Bertalan about Wilhelme's apparent change in her account of the incident, defense counsel opened the door to Bertalan's testimony about the cycle of domestic violence to explain why Wilhelme might have changed her account. Counsel reasonably may have refrained from objecting for this reason. Moreover, after Bertalan offered the challenged testimony, defense counsel, on recross-examination, elicited Bertalan's admission that her testimony applied to domestic violence cases in general, and she did not base her testimony on any information available to her in this case. The record does not support defendant's claim that defense counsel's performance with regard to Bertalan's testimony was objectively unreasonable.

Id. at *6.

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. See Keller v. Larkins, 251 F.3d 408, 419 (3rd Cir. 2001). Thus, a federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on a particular subject violates the federal constitution. See Wilson v. Parker, 515 F.3d 682, 705-706 (6th Cir. 2008). In the present case, the Michigan Court of Appeals concluded that Bartalan's testimony was not outside of the scope of her expertise regarding the issues of domestic

17

violence. Because the Michigan Court of Appeals concluded that Bartalan's expert testimony was admissible, Petitioner was not prejudiced by counsel's failure to object. Keller, 251 F. 3d at 419. Because Petitioner failed to show a reasonable probability that Bartalan's expert testimony would have been excluded had an objection been made, Petitioner is not entitled to habeas relief on this claim. See Pillette v. Berghuis, 630 F. Supp. 2d 791, 802 (E.D. Mich. 2009); aff'd in part and rev'd in part on other grds, 408 F. App'x 873 (6th Cir. 2010); cert. den. 565 U.S. 829 (2011).

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutor's closing argument.

To show prejudice under Strickland for failing to object to prosecutorial misconduct, a habeas petitioner must show that, but for the alleged error of his or her trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. Hinkle v. Randle, 271 F.3d 239, 245 (6th Cir. 2001). The prosecutor's remarks did not deprive Petitioner of a fundamentally fair trial; he cannot show that she was prejudiced by counsel's failure to object. Slagle v. Bagley, 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner next contends that trial counsel was ineffective for failing to impeach the victim or point to her inconsistent testimony in his closing argument. In his sixth claim, he contends that counsel should have impeached the victim with a police report from June 4, 2014, which shows that the victim had previously called the police and reported that Petitioner assaulted her, but that the victim was the one ultimately arrested in that situation.

The trial judge rejected this claim on post-conviction review:

The degree to which to impeach a witness is a matter of trial strategy. See People v Dixon, 263 Mich App 393, 398 (2004) (holding that "decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy".) All inconsistencies in the victim's accounts of the

> Defendant's home invasions and assault were presented to the jury through the victim's testimony and questioning by both the prosecutor and the Defendant's trial counsel. The Defendant has presented no support or argument to overcome the presumption that his trial counsel's decision not to further impeach every inconsistency of the victim was not sound trial strategy. Rather, the record supports that the Defendant's trial counsel engaged in very sound trial strategy by not continuing to point to the fact that the victim changed her account of the Defendant's threats, assault, and home invasions -with the initial accounts being given immediately following the incidents after being influenced by the Defendant. As such, the Defendant's argument lacks merit, and no reasonable appellate counsel would have raised such on appeal.

People v. Owings, No. 2017-262837-FH, * 9 (Dkt. 14-10)(PageID. 1211).

Counsel cross-examined the victim for nearly eighty transcript pages and even re-crossed her. 8/01/17 Jury Trial Tr., PageID. 743-813, 819-20 (Dkt. 14-5). Counsel obtained an admission from the victim that she and Petitioner spoke on the phone before he came over, that the tone of the call was "fine," and that they did indeed discuss Petitioner coming over that night. Id. at PageID.754. The victim further admitted that when she saw Petitioner in the home that night, she did not immediately tell him to leave; instead, they talked for a while. Id. at PageID. 770-771. Counsel obtained an admission from the victim that she and Petitioner lived together twice before and that she trusted him with the children. Id. at PageID.757-760. Petitioner had also been to her current home before, including when she was alone. Id. at PageID. 761-762. Counsel further established that the relationship between the victim and Petitioner was perpetually on and off and that they would occasionally get back together, including for "romantic encounter[s]." Id. at PageID.758, 763-764. Counsel asked on recross-examination , "You said also though once he was there that was okay with you?" to which the victim responded, "Yes." Id. at PageID.820.

Counsel also argued clearly in his closing argument: "If you find he had permission, that's the end of your analysis, you must find of a home invasion that he's not guilty of that particular charge." 8/02/17 Jury Trial Tr. PageID. 1075 (Dkt. 14-6). Counsel stressed that the full context of

the relationship between Petitioner and the victim indicated that Petitioner was not banned from the victim's home. Id.  Counsel also argued that the victim's "testimony was inconsistent," describing her testimony at trial and at the preliminary examination. Id. at PageID. 1077-1078.

Impeachment strategy falls within the category of an attorney's trial tactics that are difficult to attack. Tackett v. Trierweiler, 956 F.3d 358, 374 (6th Cir. 2020).

In the present case, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the victim and, in his closing argument, emphasized the weaknesses in her testimony.  See Krist v. Foltz, 804 F.2d 944, 948-949 (6th Cir. 1986); Millender v. Adams, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002). "Although other attorneys might have reached a different conclusion about the value of cross-examining [the victim] in greater detail, counsel's strategic choice not to further cross-examine the victim was "'within the wide range of reasonable professional assistance.'" See Moss v. Hofbauer, 286 F.3d 851, 864 (6th Cir. 2002) (quoting Strickland, 466 U.S. at 689).  While counsel "could have further probed the inconsistencies highlighted by" Petitioner, "his failure to do so in light of the otherwise extensive cross-examination does not undermine the presumption that his "'conduct falls within the wide range of reasonable professional assistance.'" Moss v. Olson, 699 F. App'x 477, 487 (6th Cir. 2017) (quoting Strickland, 466 U.S. at 689).  Finally, Petitioner has failed to identify how additional impeachment of the victim would have affected the jury's decision. Defense counsel did not perform ineffectively by not more forcefully cross-examining the victim, particularly when the effect of further probing was entirely speculative on Petitioner's part. See Jackson v. Bradshaw, 681 F.3d 753, 764-765 (6th Cir. 2012).

Petitioner next contends that counsel was ineffective for failing to Offense Variable 13 of the Michigan Sentencing Guidelines. Counsel, in fact, did object, but in any event, on appeal, the Michigan Court of Appeals concluded that the sentencing guidelines were correctly scored.

The Michigan Court of Appeals determined that OV 13 and OV 19 were correctly scored. People v. Owings, 2019 WL 1211443, at * 9-10. State courts are the final arbiters of state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court must reject this ineffective assistance of trial counsel claim. See Davis, 430 F.3d at 291.  In this case, the trial judge and the Michigan appellate courts rejected Petitioner's sentencing guidelines claim.  Petitioner is therefore unable to show that he was prejudiced by his trial counsel's purported ineffectiveness in failing to challenge the scoring of his sentencing guidelines. See, e.g., Coleman v. Curtin, 425 F. App'x 483, 485 (6th Cir. 2011).

Petitioner next contends that trial counsel was ineffective for failing to move for the sequestration of Trooper Hallette, the officer in charge of the case.

Mich. R. Evid. 615 indicates that the trial court may not exclude "an officer or employee of a party which is not a natural person designated as its representative by its attorney."  Trooper Hallette, as the officer in charge of the case, would have fallen within this exception for witness sequestration under Rule 615, thus, trial counsel was not ineffective for failing to move for his sequestration. See United States v. Lott, 365 F. App'x 946, 950 (10th Cir. 2010).

Petitioner finally argues that trial counsel was ineffective for failing to file a motion to quash the information to challenge the district court's decision to bind him over for trial on these charges following his preliminary examination. The circuit court judge on post-conviction review rejected this claim, noting that there was sufficient evidence presented at the preliminary

21

examination to bind Petitioner over for trial on the two criminal charges. People v. Owings, No. 2017-262837, * 11 (Dkt. 14-10)(PageID. 1213).

In the present case, the circuit court judge whom counsel would have filed the motion to quash in front of determined that there was sufficient evidence presented at the preliminary examination to support a bindover to the circuit court. Petitioner has thus failed to show that counsel would have been successful had he challenged the bindover prior to trial. Because Petitioner has not established that he was prejudiced by trial counsel's failure to object to his bind over, his ineffective assistance of counsel claim is without merit. See Dell v. Straub, 194 F. Supp. 2d 629, 649 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

### E. Trial Error

Petitioner in his fourth claim alleges that the trial judge violated his constitutional rights in the following ways: (i) failure to direct a verdict of not guilty on the home invasion charge, (ii) permitting the prosecutor to play prejudicial recordings of the victim and Petitioner to the jury, (iii) permitting the prosecutor to introduce prior bad acts evidence involving prior acts of domestic violence against the victim, (iv) denying Petitioner's request to consult with separate counsel before deciding whether or not to testify, (v) improperly scoring offense variables under the Michigan Sentencing Guidelines, and (vi) improperly departing above the sentencing guidelines range.

Petitioner first contends that the trial judge erred in failing to direct a verdict of acquittal on the first-degree home invasion charge. [1]

---

[1] Petitioner's claim involving the trial court's failure to direct a verdict of acquittal should really be construed as an attack on the sufficiency of the evidence. See United States v. Cope, 312 F.3d 757, 778 (6th Cir. 2002).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-19 (punctuation modified)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. See United States v. Farley, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." United States v. Kelley, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); See also Saxton v. Sheets, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence.").  Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003)(quoting Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508 n.17 (1957)); see also Holland v. United States, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

23

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." Id.

Mich. Comp. Laws § 750.110a(2) states that:

> A person who breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
> (b) Another person is lawfully present in the dwelling.

Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon and/or that the dwelling be occupied. See Johnson v. Warren, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004)(citing United States v. Garcia-Serrano, 107 F. App'x 495, 496-97 (6th Cir. 2004)). Michigan's first- degree home invasion statute does not require that there be a "breaking." Instead, a defendant's act of entering without permission with the intent to commit a felony is sufficient to

support a conviction of first degree home invasion. See Holtgrieve v. Curtis, 174 F. Supp. 2d 572,

583 (E.D. Mich. 2001).

> The Michigan Court of Appeals rejected Petitioner's claim:
>
> Defendant challenges only the first element, arguing that the evidence was insufficient to show that he did not have permission to enter Wilhelme's home.
>
> At trial, Wilhelme testified that, before the assault, she and defendant had discussed defendant's desire to come over to her house to talk about their relationship. But according to Wilhelme, when she spoke to defendant on the telephone after she returned home, she explained that she was going to bed and did not want to discuss their relationship at that time. Although defendant is correct that Wilhelme admitted at trial that after she ended her conversation with defendant she "kinda" expected him to show up at her home, she did not testify that she had invited defendant there or given him permission to enter her home. To the contrary, she made it clear in her testimony that she did not invite defendant over to the house, and she did not expect him to be inside her home when she discovered him peeking through the fish tank. Moreover, the testimony established that defendant did not have free access to the house, and none of the other occupants had allowed defendant to enter.
>
> The circumstantial evidence also supported a reasonable inference that defendant entered the home without permission. First, there were footsteps found leading from the complex's clubhouse to a rarely used back entrance to the mobile home. Moreover, when Wilhelme discovered defendant, he was crouched down behind a fish tank outside her bedroom door around 3:00 a.m. Defendant's attempt to conceal himself behind a fish tank outside Wilhelme's bedroom allowed the jury to infer that defendant knew that he was not supposed to be inside Wilhelme's home.
>
> Defendant argues that when denying his motion for a directed verdict, the trial court inaccurately stated that Wilhelme "unequivocally instructed the defendant that he was not to come over to the house, that she was done talking about it." Although defendant takes exception to the trial court's use of the word "unequivocally," the court's word choice is immaterial because our review is de novo. As indicated, Wilhelme testified at trial that she told defendant that she was going to bed and did not want to further discuss their relationship that night, and she made it clear that she did not invite defendant to her home. In fact, she testified that she told defendant multiple times to leave. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant entered Wilhelme's home without permission. Accordingly, the trial court did not err by denying defendant's motion for a directed verdict.

People v. Owings, 2019 WL 1211443, at *2–3.

The victim testified that she did not invite Petitioner over to the house that night or give him permission to enter her mobile home. Her testimony was buttressed by the fact that there were footsteps found leading from the complex's clubhouse to a rarely used back entrance to the mobile home, suggesting that Petitioner was attempting to sneak into the mobile home without the victim's permission. In addition, the victim discovered Petitioner at 3:00 a.m. crouched down behind a fish tank outside her bedroom door, to conceal himself. None of these actions are consistent with Petitioner being given permission to enter the victim's home. Finally, the mere fact that Petitioner may have had permission in the past to enter the victim's home does not establish that he had permission to be inside of her home that night. See, e.g., Holtgreive, 174 F. Supp. 2d at 584. Petitioner is not entitled to relief on this claim.

Petitioner in his second and third subclaims alleges errors involving Michigan's evidentiary rules. In his second subclaim, he alleges that the judge erred in permitting the prosecutor to play the recorded conversations between the victim and Petitioner in order to refresh her memory. In his third subclaim, Petitioner alleges that the judge erred in permitting the prosecutor to introduce into evidence Petitioner's prior acts of domestic violence.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. Id. Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. Seymour v. Walker, 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the trial court improperly allowed the prosecutor to play the contents of the taped conversations in order to refresh the victim's memory is neither a violation of Petitioner's

26

due process rights nor is it cognizable on habeas review. See Chavez v. Dickson, 300 F.2d 683, 688–689 (9th Cir. 1962)(State court's ruling on admissibility of document to refresh memory of state witness who had no independent recollection of conversation transcribed in document, was not subject to review in federal habeas corpus proceeding); Washington v. Ricci, 631 F. Supp. 2d 511, 518-19 (D.N.J. 2008)(admission of identification witness' prior statement to police to refresh her memory did not violate murder defendant's due process rights).

Petitioner in his third subclaim alleges that his due process rights were violated by the admission of prior bad acts evidence which he claims was used solely to show that he had the propensity to commit acts of domestic violence.  Petitioner's claim that the state court violated Michigan Rules of Evidence 404(b), Mich. Comp. Laws § 768.27b, or any other provision of state law by admitting improper character evidence or evidence of prior bad acts is non-cognizable on habeas review. See Bey v. Bagley, 500 F. 3d 514, 519 (6th Cir. 2007); Estelle, 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); Dowling v. United States, 493 U.S. 342, 352-353 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process).  The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. See Bugh v. Mitchell, 329 F. 3d 496, 512 (6th Cir. 2003).  Petitioner is not entitled to habeas relief on this subclaim.

Petitioner in his fourth subclaim alleges that the judge denied him his right to counsel and his right to testify when the judge refused to allow Petitioner to consult with another attorney other than his trial counsel to determine whether or not he should testify.

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. Serra v. Mich. Dep't of Corr., 4 F.3d 1348, 1351 (6th Cir. 1993) (citing Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989)).  A criminal defendant who has the desire and the financial means to retain his or her own counsel "should be afforded a fair opportunity to secure counsel of his own choice." Id. (quoting Powell v. Alabama, 287 U.S. 45, 53 (1932)).  Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006)(quoting Caplin & Drysdale, 491 U.S. at 624-625).  However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. Serra, 4 F.3d at 1348 (citing to Wheat v. United States, 486 U.S. 153, 159 (1988)).  Stated differently, the right to counsel of one's own choice is not absolute. See Wilson v. Mintzes, 761 F. 2d 275, 280 (6th Cir. 1985).  "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." Lockett v. Arn, 740 F. 2d 407, 413 (6th Cir. 1984); See also Gonzalez-Lopez, 548 U.S. at 151-152) ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them...We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of

its calendar.")(internal citations omitted).  Finally, the right to counsel of choice may not be used to unreasonably delay a trial. See Linton v. Perini, 656 F.2d 207, 209 (6th Cir. 1981).

In the present case, Petitioner did not seek to retain another attorney to consult with concerning his right to testify but wanted the trial judge to appoint a second attorney to provide him a second opinion as to whether or not he should testify.

Indigent criminal defendants like Petitioner do not have a Sixth Amendment right to counsel of their choice. See Daniels v. Lafler, 501 F.3d 735, 739 (6th Cir. 2007). In addition, the Sixth Amendment does not guarantee a criminal defendant the right to "second-opinion counsel." United States v. Harris, 717 F. App'x 715, 717 (9th Cir. 2017).  Petitioner is not entitled to habeas relief on his fourth subclaim.

Petitioner in his fifth subclaim alleges that his sentencing guidelines were incorrectly scored.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. See Tironi v. Birkett, 252 F. App'x 724, 725 (6th Cir. 2007); Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003).  Errors in the application of state sentencing guidelines cannot independently support habeas relief. See Kissner v. Palmer, 826 F. 3d 898, 904 (6th Cir. 2016).  Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." See Mitchell v. Vasbinder, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  "[I]n short, Petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." Doyle v. Scutt, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating Petitioner's guideline score would not merit habeas relief. Id.

29

Petitioner in his related sixth claim alleges that the judge improperly departed above the sentencing guidelines range.

Petitioner's related claim that the state trial court improperly departed above the sentencing guidelines range would not entitle him to habeas relief, because such a departure does not violate any of Petitioner's federal due process rights. See Austin v. Jackson, 213 F.3d 298, 301 (6th Cir. 2000); See also Baker v. Barrett, 16 F. Supp. 3d 815, 837 (E.D. Mich. 2014); Drew v. Tessmer, 195 F. Supp. 2d 887, 889-90 (E.D. Mich. 2001). Any error by the trial court in departing above Petitioner's sentencing guidelines range alone would not merit habeas relief. Doyle, 347 F. Supp. 2d at 485. This is particularly so in light of the fact that even if the judge departed above the sentencing guidelines range on the minimum sentence, Petitioner's maximum sentence was within the statutory range for the offenses that he was convicted of. See Simpson v. Warren, 662 F. Supp. 2d 835, 851 (E.D. Mich. 2009), aff'd, 475 F. App'x 51 (6th Cir. 2012).

Petitioner is not entitled to relief on his fourth claim.

### F.  Instructional Error

Petitioner next contends that his right to due process was violated because the judge failed to instruct the jurors on the assault by strangulation charge that the jurors had to find that Petitioner intended to do great bodily harm to the victim when he strangled her. Petitioner argues that the jurors were required to find this element because the charge of assault with intent to strangulation charge is part of the assault with intent to do great bodily harm statute, Mich. Comp. Laws § 750.84.

The trial judge rejected this claim on post-conviction review:

The Defendant was charged with and convicted of assault by strangulation, MCL 750.84(1)(b). This Court properly instructed the jury as to the elements of this crime. The Defendant was not charged with nor convicted of assault with intent to do great bodily harm, less than murder, MCL 750.(l)(a). To be found guilty of

> assault with intent to do great bodily harm by strangulation, Defendant only had to
> be found guilty of "[a]ssaulting another person by strangulation or suffocation."
> People v Barber, 332 Mich App 707, 715 (2020). "Subsections (l)(a) and (l)(b) are
> alternative means of committing the same, single offense[.]" Id.

People v. Owings, No. 2017-262837-FH, * 11-12 (Dkt. 14-10)(PageID. 1213-14).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbee, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. Jones v. United States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. Waddington v. Sarausad, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. Id. at 191.  Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. Estelle, 502 U.S. at 72.

The United States Supreme Court "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw, 546 U.S. at 76.  State courts are the "ultimate expositors of state law." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975).  What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. See Sanford v. Yukins, 288 F.3d 855, 862

31

(6th Cir. 2002). Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes." See Lakin v. Stine, 80 F. App'x. 368, 373 (6th Cir. 2003)(citing Apprendi v. New Jersey, 530 U.S. 466, 484-87 (2000); McMillan v. Pennsylvania, 477 U.S. 79, 84-86, (1986)).

The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. Newton v. Million, 349 F.3d 873, 879 (6th Cir. 2003). "Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." Rashad v. Lafler, 675 F.3d 564, 569 (6th Cir. 2012).

The state trial judge on post-conviction review determined that the instruction that he gave to the jurors on the offense of assault by strangulation accurately reflected Michigan law regarding the elements of this offense; this Court must defer to that determination and cannot question it. See Seymour v. Walker, 224 F. 3d at 558. Petitioner is not entitled to relief on his fifth claim.

### G. Newly Discovered Evidence

Petitioner in his sixth claim alleges he has newly discovered evidence that his attorney could have used to impeach the victim and prove his innocence, namely, the June 4, 2014 police report that shows that the victim had previously called the police and reported that Petitioner assaulted her, but that the victim was the one ultimately arrested in that prior incident.

In Herrera v. Collins, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal

32

proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. Id., See also McQuiggin v. Perkins, 569 U.S. 383, 392 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. See Cress v. Palmer, 484 F.3d 844, 854-855 (6th Cir. 2007)(collecting cases). Petitioner would therefore not be entitled to relief for a freestanding actual innocence claim under available Supreme Court precedent. See Wright v. Stegall, 247 F. App'x 709, 711 (6th Cir. 2007).

In any event, Petitioner's allegedly new evidence of the June 4, 2014 police report would not exonerate Petitioner of the offenses he was convicted of, but at most, could only be used to impeach the victim's credibility. Impeachment evidence does not provide sufficient evidence of actual innocence to support a free-standing innocence claim. See Calderon v. Thompson, 523 U.S. 538, 563 (1998)(newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); Sawyer v. Whitley, 505 U.S. 333, 349 (1992)(newly discovered impeachment evidence "will seldom, if ever," establish actual innocence). Petitioner is not entitled to relief on his sixth claim.

### H. Constitutionality of the assault by strangulation statute

Petitioner next contends that Michigan's assault by-strangulation statute, Mich. Comp. Laws § 750.84(1)(b), is unconstitutionally vague, alleging that it captures innocent conduct as well as criminal conduct.

Respondent argues that this claim is procedurally defaulted, however, because the one and only time Petitioner presented it in the state courts was in his application for leave to appeal to the Michigan Supreme Court from the denial of his motion for relief from judgment. Respondent

33

argues that since Petitioner did not present this claim to the trial court in his post-conviction motion for relief from judgment or to the Michigan Court of Appeals in his post-conviction appeal, the claim was never properly exhausted but since Petitioner has no remaining state court remedies to properly exhaust this claim, the claim is procedurally defaulted as well.

Petitioner did not challenge the constitutionality of Michigan's assault by strangulation statute in his post-conviction motion for relief from judgment that he filed with the trial court (Dkt. 14-9) or in his post-conviction appeal that he filed with the Michigan Court of Appeals. (Dkt. 14-15, PageID. 1518-53). Although Petitioner attempted to raise this claim for the first time as a new issue in his post-conviction appeal with the Michigan Supreme Court, his subsequent presentation of his seventh claim to the Michigan Supreme Court on post-conviction review did not satisfy the exhaustion requirement for habeas purposes. See Warlick v. Romanowski, 367 F. App'x 634, 643 (6th Cir. 2010).

To properly exhaust a claim on state post-conviction review, a habeas petitioner is required to present that claim in his or her post-conviction motion before the state trial court and in his or her post-conviction appeal to the state's appellate courts. See Smith v. Gaetz, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner's failure to present his claim challenging the constitutionality of Michigan's assault by strangulation statute in his post-conviction motion for relief from judgment or in his post-conviction appeal to the Michigan Court of Appeals means that this claim was never exhausted.

Unfortunately, Petitioner no longer has any available state court remedies with which to exhaust his seventh claim. Under Mich. Ct. R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. See Gadomski v. Renico, 258 F. App'x 781, 783 (6th Cir. 2007); Hudson v. Martin, 68 F. Supp. 2d 798, 800 (E.D.

34

Mich. 1999).  Petitioner has no remaining state court remedies with which to exhaust this claim. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust.  However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. Hannah v. Conley, 49 F.3d 1193, 1195-1196 (6th Cir. 1995).  A claim of actual innocence will excuse this "cause and prejudice" requirement. Id. at 1196, n. 3.

Petitioner has failed to establish cause to excuse his default.  While ineffective assistance of appellate counsel might excuse Petitioner's failure to raise his claims on his direct appeal, it does not excuse Petitioner's own failure to properly exhaust this claim in his post-conviction motion for relief from judgment. See Gadomski v. Renico, 258 F. App'x at 784.

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider Petitioner's seventh claim as grounds for a writ of habeas corpus despite the procedural default.  Petitioner's sufficiency of evidence claim (part of Claim # 4) is insufficient to invoke the actual innocence doctrine to the procedural default rule. See Malcum v. Burt, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).  Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's procedurally defaulted claim on the merits. Malcum, 276 F. Supp. 2d at 677.  Petitioner is not entitled to relief on his seventh claim.

**I.  Ineffective Assistance of Appellate Counsel**

Finally, Petitioner argues that appellate counsel was ineffective for in failing to raise on direct appeal the claims that Petitioner raised in his state motion for relief from judgment.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, See Evitts v. Lucey, 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. Halbert v. Michigan, 545 U.S. 605, 609–610 (2005). Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983). A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. Woods v. Etherton, 578 U.S. 113, 119 (2016)(per curiam).

Petitioner's claims that he raised on post-conviction review before the state courts are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" Shaneberger v. Jones, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).

Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### IV. CONCLUSION

Before petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the

district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-485 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id. at 484. "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; See also Strayhorn v. Booker, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case. See Strayhorn, 718 F. Supp. 2d at 854.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the

37

denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed in forma pauperis on appeal. Id.

## V.  ORDER

It is ordered that the petition for writ of habeas corpus is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that Petitioner is granted leave to appeal in forma pauperis.

**SO ORDERED.**

Dated: June 24, 2026                                    s/Mark A. Goldsmith
Detroit, Michigan                                        MARK A. GOLDSMITH
                                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 24, 2026.

                                                         s/Joseph Heacox
                                                         JOSEPH HEACOX
                                                         Case Manager

38